**Reversed and Rendered and Majority and Dissenting Opinions filed May 6, 2014.**



In the

# Fourteenth Court of Appeals

### NO. 14-13-00605-CV

## THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, Appellant

### V.

## TERESA MCQUEEN AND CLARENCE MCQUEEN, JR., Appellees

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2012-07983**

## M A J O R I T Y   O P I N I O N

In this health care liability case, appellant the University of Texas Health Science Center at Houston ("UTHSCH") challenges on interlocutory appeal the trial court's denial of its plea to the jurisdiction based on sovereign immunity in favor of appellees Teresa McQueen and Clarence McQueen. Concluding that the trial court erred when it denied UTHSCH's plea to the jurisdiction, we reverse the

court's order and render judgment dismissing the McQueens' suit.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Teresa McQueen underwent a robotic-assisted total laparoscopic hysterectomy and bilateral salpingo oophorectomy ("hysterectomy") at Memorial Hermann Hospital on September 10, 2009. Dr. Karen Schneider was the primary physician who performed the hysterectomy. At the time, Schneider was employed by UTHSCH as an associate professor in the Department of Obstetrics and Gynecology, and as an assistant residency program director. Dr. Pamela Berens, another UTHSCH physician, and Dr. Gus Zamora, a third-year UTHSCH resident, assisted Schneider during the hysterectomy.

Teresa was discharged on September 12, 2009. Two days later, on September 14, she presented to Memorial Hermann's emergency room complaining of abdominal pain, fever, and other symptoms. An attending physician examined Teresa and suspected a possible bowel perforation. On September 15, 2009, Berens performed a diagnostic laparoscopic surgery and discovered fecal material in Teresa's lower abdomen. Dr. Elizabeth Lawrence, another UTHSCH physician attending the procedure, then examined Teresa's small bowel, discovered a 1 cm by 1 cm area of perforation in the sigmoid colon, and performed a bowel resection.

On February 8, 2012, the McQueens filed suit against Schneider.[1] In their live petition, the McQueens alleged Schneider's negligence in, among other things,[2] injuring Teresa's bowel through negligent use of a trocar, laparoscopic

---

[1] The McQueens added as a defendant but later nonsuited UT Physicians f/k/a University Care Plus.

[2] The McQueens also alleged Schneider's negligent failures to monitor, diagnose, treat, and provide medical and nursing care reasonably required for Teresa's condition. Within its third issue, UTHSCH argues that these particular alleged failures do not involve use of tangible

2

instrument, and/or monopolar cautery instruments. After Schneider filed a motion to dismiss as a government employee pursuant to section 101.106(f) of the Texas Tort Claims Act ("TTCA"), the McQueens substituted in UTHSCH on June 13, 2012.

UTHSCH filed a verified answer, specifically denying receipt of notice pursuant to section 101.101 of the TTCA. UTHSCH then filed its plea to the jurisdiction, specifically arguing that it had no notice of the McQueens' claims within six months and that their claims do not waive UTHSCH's sovereign immunity. UTHSCH supported its plea with an affidavit signed by its risk manager, Catherine Thompson.[3] In her affidavit, Thompson stated that she had found no record of any written or actual notice of a claim received from or on behalf of the McQueens within six months of the incident, including the September 10, 2009 surgery. Thompson also stated:

> UTHSCH had no notice, either actual or written, of: 1) the injuries or damages claimed by Teresa McQueen and Clarence McQueen, Jr. in this lawsuit; 2) the time and the place of the incidents alleged by Teresa McQueen and Clarence McQueen, Jr. in this lawsuit; or 3) the incidents alleged in this lawsuit by Teresa McQueen and Clarence McQueen, Jr. within six (6) months after the day that the alleged incidents giving rise to Teresa McQueen and Clarence McQueen Jr.'s claims occurred. UTHSCH had no knowledge of its alleged fault producing or causing injury to Teresa McQueen or Clarence McQueen, Jr. within six (6) months after the day that the alleged incidents giving rise to Teresa McQueen and Clarence McQueen Jr.'s claims occurred.

property and thus do not waive UTHSCH's sovereign immunity under section 101.021 of the Texas Tort Claims Act. *See Univ. of Tex. M.D. Anderson Cancer Ctr. v. King*, 329 S.W.3d 876, 880–81 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Because we reverse based on actual notice, however, we do not reach this argument. *See* Tex. R. App. P. 47.1.

[3] UTHSCH also presented medical records and excerpts from the McQueens' and Schneider's depositions.

The McQueens filed a response to UTHSCH's plea and attached evidence, including Memorial Hermann medical records, Schneider's deposition testimony, and the affidavit of expert Dr. Frank Battaglia, who opined that Schneider's substandard surgical technique represented a deviation from the standard of care. UTHSCH filed its reply and also filed objections to the Battaglia affidavit. The trial court overruled UTHSCH's objections and denied its plea. UTHSCH timely filed this interlocutory appeal pursuant to section 51.014(a)(8) of the Texas Civil Practice and Remedies Code.

On appeal, UTHSCH argues that the trial court erred in denying its plea because (1) the McQueens failed to provide UTHSCH with timely written notice of their claim pursuant to section 101.101(a) of the TTCA and (2) the McQueens did not raise a fact issue with regard to whether UTHSCH had actual notice of the McQueens' claim pursuant to section 101.101(c) of the TTCA. To the extent a fact issue exists as to actual notice, UTHSCH argues the trial court erred in denying its plea because the McQueens failed to allege or establish that their claims were caused by a negligent condition or use of tangible property pursuant to the TTCA. Finally, UTHSCH contends that the trial court erred in overruling UTHSCH's objections to the Battaglia affidavit.

## II.    ANALYSIS

### A.    Governmental immunity and notice under the TTCA

Absent a waiver, governmental entities, like UTHSCH, are generally immune from suits for damages. *See Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 546 (Tex. 2010). The TTCA waives governmental immunity for negligent acts in certain circumstances, including for personal injury caused by the condition or use of tangible personal or real property. *See* Tex. Civ. Prac. & Rem. Code § 101.021(2) (West 2011). To take advantage of

4

this waiver and overcome the shield of governmental immunity, a claimant must notify the governmental unit of the negligent act not later than six months after the incident. *See id.* § 101.101(a) (West 2011). The notice must reasonably describe the injury, the time and place of the incident, and the incident itself. *Id.* The purpose of the TTCA's notice provision is to enable the governmental unit to investigate while the facts are fresh and the conditions are substantially similar in order to guard against unfounded claims, settle claims, and prepare for trial. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam); *Garcia v. Tex. Dep't of Criminal Justice*, 902 S.W.2d 728, 731 (Tex. App.—Houston [14th Dist.] 1995, no writ).

The failure to give notice under section 101.101 requires dismissal of a suit for lack of jurisdiction because the Texas legislature has determined that the TTCA's notice requirement is jurisdictional in nature. Tex. Gov't Code Ann. § 311.034 (West 2013) ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."); *Arancibia*, 324 S.W.3d at 546, 548 ("[T]he purported failure to provide notice would deprive the trial court of jurisdiction[.]"); *see Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 511, 513 (Tex. 2012) ("Although section 311.034's scope is fairly sweeping, it is consistent with the purpose of sovereign immunity and within the Legislature's discretion to determine the procedures required before the State's immunity is waived.").

However, formal written notice is not required where the governmental unit "has actual notice" that "the claimant has received some injury." Tex. Civ. Prac. & Rem. Code § 101.101(c). Mere knowledge that an incident has occurred, however, is not enough to establish actual notice. *Cathey*, 900 S.W.2d at 341. The Texas Supreme Court has "rejected an interpretation of actual notice that would require

5

*only* that a governmental unit have knowledge of a death, an injury, or property damage[] because a defendant, like a hospital, would then have to investigate the standard of care provided to each and every patient that received treatment, eviscerating the notice requirement's purpose." *Arancibia*, 324 S.W.3d at 548 (internal quotation marks omitted) (citing *Cathey*, 900 S.W.2d at 341).

Under the TTCA, actual notice to a governmental unit requires the governmental unit's: (1) knowledge of a death, injury, or property damage; (2) subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed death, injury, or property damage[4]; and (3) knowledge of the identity of the parties involved. *Id.* at 548–59 (discussing *Cathey*'s "subjective awareness" requirement as further explained by the court in *Texas Department of Criminal Justice v. Simons*, 140 S.W.3d 338 (Tex. 2004)); *Simons*, 140 S.W.3d at 344–48; *see Cathey*, 900 S.W.2d at 341 (outlining three elements). In other words, the governmental unit must have knowledge that amounts to the same notice to which it is entitled under section 101.101(a), which "includes subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury." *Arancibia*, 324 S.W.3d at 548–49 (citing *Simons*, 140 S.W.3d at 347). "Fault, as it pertains to actual notice, is not synonymous with liability; rather it implies responsibility for the injury claimed." *Id.* at 550. Subjective awareness often will be proved "if at all, by circumstantial evidence." *Id.* (citing *Simons*, 140 S.W.3d at 348).

Actual notice may be imputed to the governmental entity by an agent or representative who receives notice of the *Cathey* elements and who is charged with a duty to investigate the facts and report them to a person of sufficient authority. *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Stevens*, 330 S.W.3d 335, 339–40

---

[4] The dispute here concerns this "subjective awareness" requirement.

(Tex. App.—San Antonio 2010, no pet.) (actual notice imputed where pediatrics residency program director conducted faculty review of chemical burn incident involving mistaken injection of topical anesthetic into wound by resident and, according to operating agreement between residency program and hospital, had agreed to conduct investigations into problems involving residents); *see Dinh v. Harris Cnty. Hosp. Dist.*, 896 S.W.2d 248, 253 (Tex. App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.).  Actual notice thus is not limited to only a particular government official or employee, such as a director of risk management or hospital administrator.  *See Stevens*, 330 S.W.3d at 339; *Dinh*, 896 S.W.2d at 253.

If a governmental unit has this subjective awareness of fault, then requiring formal, written notice would do nothing to further the statutory purposes of information gathering, settling claims, and preparing for trial.  *Arancibia*, 324 S.W.3d at 549; *Simons*, 140 S.W.3d at 347.  However, "[i]f a governmental unit is not subjectively aware of its fault, it does not have the same incentive to gather information that the statute is designed to provide, even when it would not be unreasonable to believe that the governmental unit was at fault."  *Simons*, 140 S.W.3d at 348.

## B.     Plea to the jurisdiction

A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).  The plea challenges the trial court's jurisdiction over the subject matter of a pleaded cause of action.  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).  If a governmental unit has immunity from a pending claim, a trial court lacks subject matter jurisdiction as to that claim.  *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012).  We review a trial court's ruling on a plea to the jurisdiction de novo.

7

*Miranda*, 133 S.W.3d at 228.

A plaintiff bears the burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction. *Id.* at 226 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). When a trial court's decision concerning a plea to the jurisdiction is based on the plaintiff's petition, we must accept as true all factual allegations in the petition, construe the pleadings liberally, and look to the pleader's intent. *Id.* at 226–27. A plea to the jurisdiction may be granted without allowing amendment if the pleading affirmatively negates the existence of jurisdiction. *Id.* at 227.

Where the governmental unit challenges the existence of jurisdictional facts, and the parties submit evidence relevant to the jurisdictional challenge, we consider that evidence when necessary to resolve the jurisdictional issues raised. *Id.* We credit as true all evidence favoring the nonmovant and draw all reasonable inferences and resolve any doubts in the nonmovant's favor. *Id.* at 228 (acknowledging standard generally mirrors that of traditional summary judgment). If the movant discharges its burden to establish that the trial court lacks jurisdiction, the nonmovant must present evidence sufficient to raise a material issue of fact regarding jurisdiction, or the plea will be sustained. *Id.*

In its first two issues, UTHSCH argues that the trial court erred in denying its plea to the jurisdiction because the McQueens failed to comply with the jurisdictional notice requirement—written and actual notice—of the TTCA. Because the statutory prerequisite of notice to suit against a governmental unit under the TTCA is a jurisdictional requirement, it is properly asserted in a plea to the jurisdiction. *See Arancibia*, 324 S.W.3d at 546; *Colquitt v. Brazoria Cnty.*, 324 S.W.3d 539, 543 (Tex. 2010) (per curiam) (failure to meet section 101.101's notice requirement "operate[s] to preserve the government's immunity").

8

Although actual notice may be a fact question when the evidence is disputed, it can be determined as a matter of law if the pertinent facts are uncontested. *Arancibia*, 324 S.W.3d at 549; *Simons*, 140 S.W.3d at 348 ("In many instances, however, actual notice can be determined as a matter of law."). Here—apart from Battaglia's affidavit[5]—the parties do not dispute the facts presented on the jurisdictional issue, they simply dispute the legal significance of that evidence. Accordingly, we review the trial court's ruling as a matter of law. *See Simons*, 140 S.W.3d at 348; *Miranda*, 133 S.W.3d at 226.

## C. UTHSCH did not have formal notice of the McQueens' claims.

With regard to formal notice, with its plea UTHSCH presented Thompson's affidavit verifying that the McQueens did not provide written notice to UTHSCH within six months of the incident giving rise to their claims.[6]

The McQueens do not dispute that, for jurisdictional purposes, they brought their claims against UTHSCH under the TTCA. They also do not dispute that they did not provide written, formal notice pursuant to section 101.101(a). However, on appeal, they contend that they should not be subject to the six-month notice requirement of the TTCA at all here where they complied with the requirement to provide notice to Schneider six months prior to bringing a health care liability claim under section 74.051 of the Texas Civil Practice and Remedies Code.[7]

---

[5] Solely for purposes of our analysis, we presume without deciding that Battaglia's affidavit would be admissible.

[6] UTHSCH also presented deposition excerpts from the McQueens wherein they acknowledged that they did not ever personally contact UTHSCH, Schneider, or any other UTHSCH employee to complain about the care provided to Teresa.

[7] Section 74.051, Notice, provides:

(a) Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state

Specifically, they argue that a conflict exists between the notice provisions in sections 74.051 and 101.101 "because Chapter 74 authorizes a limitations period of 2 years and 75 days from the date of the incident for a health care liability claim while § 101.101 would shorten that limitations time period to six (6) months." *See* Tex. Civ. Prac. & Rem. Code §§ 74.051(c) (75-day tolling period), 74.251(a) (two-year statute of limitations).

However, our review of the record does not reveal that the McQueens raised this conflict issue before the trial court. Thus, the McQueens have failed to preserve error as to this argument, and we do not address their conflict issue. *See* Tex. R. App. P. 33.1; *Karaali v. Petroleum Wholesale, L.P.*, No. 14-11-00577-CV, 2013 WL 6198349, at *5 (Tex. App.—Houston [14th Dist.] Nov. 26, 2013, no pet.) (mem. op.); *Fontenot v. Stinson*, 369 S.W.3d 268, 276 n.10 (Tex. App.—Houston [14th Dist.] 2011, pet. filed) (substitute op. on reh'g).[8]

---

based upon a health care liability claim. The notice must be accompanied by the authorization form for release of protected health information as required under Section 74.052.

    (b) In such pleadings as are subsequently filed in any court, each party shall state that it has fully complied with the provisions of this section and Section 74.052 and shall provide such evidence thereof as the judge of the court may require to determine if the provisions of this chapter have been met.

    (c) Notice given as provided in this chapter shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and this tolling shall apply to all parties and potential parties.

    . . . .

Tex. Civ. Prac. & Rem. Code § 74.051 (West 2011). In their petition, the McQueens alleged performance of all conditions precedent and compliance with sections 74.051 and 74.052.

[8] Even if the McQueens had raised this conflict issue below, section 101.101 of the TTCA has no direct impact on the timing or operation of the health care liability statute of limitations or tolling of that statute, and the two provisions "may, and often do, operate independently of one another." *See Timmons v. Univ. Med. Ctr.*, 331 S.W.3d 840, 844–46 (Tex. App.—Amarillo 2011, no pet.) (citing *Chilkewitz v. Hyson*, 22 S.W.3d 825, 829–30 (Tex. 1999), in rejecting argument that section 101.101's jurisdictional notice requirement conflicts with timing provided within and is trumped by section 74.251's two-year statute of limitations).

**D.     UTHSCH did not have actual notice of the McQueens' claims.**

With regard to actual notice, UTHSCH argues that the McQueens have not raised a fact issue on whether UTHSCH had actual notice of their claims under section 101.101(c) within six months.  In particular, UTHSCH points out that the incident did not occur at UTHSCH, but rather at Memorial Hermann Hospital.[9] UTHSCH contends it presented Thompson's uncontroverted affidavit establishing that its risk management department did not have actual notice of the McQueens' claims within six months.[10]  UTHSCH argues that the fact that Schneider, Berens, and Lawrence may have been aware of the occurrence of Teresa's bowel injury is not sufficient to impute actual notice to UTHSCH.  According to UTHSCH, none of these physicians had a duty to investigate or report claims, and did not report to UTHSCH that they had knowledge and "subjective awareness" that UTHSCH's fault produced or contributed to Teresa's bowel injury.  UTHSCH argues at the

---

Moreover, limitations is an affirmative defense, which is waivable and distinct in nature from the TTCA's notice requirement, which is a jurisdictional prerequisite to suit.  *See id.* at 846.  Further, chapter 74 expressly states that it does not waive sovereign immunity.  Tex. Civ. Prac. & Rem. Code § 74.003 (West 2011).

[9] While this appears to be the case, for purposes of supporting its plea, UTHSCH relied on Memorial Hermann's medical records.

[10] In *Huffine v. Tomball Hospital Authority*, this court considered whether the affidavit of the president/CEO of the hospital, a governmental entity, was legally sufficient summary judgment evidence for purposes of proving the nonreceipt of notice under the TTCA.  979 S.W.2d 795, 801–02 (Tex. App.—Houston [14th Dist.] 1998, no pet.).  There, the hospital president/CEO testified that the only notice the hospital received was the letter from the plaintiff's attorney making a claim against the hospital, and that the hospital did not have actual notice before receiving the letter.  *Id.* at 801 (noting similar affidavit held sufficient in *Cathey*).  This court found the hospital president/CEO's affidavit "was clear, positive and direct, otherwise credible and free from inconsistencies, and could have been readily controverted."  *Id.* at 802. This court concluded that "[a]bsent any controverting proof of actual notice of any alleged culpability on its part producing or contributing to any injury to appellant, the Hospital's summary judgment evidence was legally sufficient to prove that the appellant failed to comply with the notice provisions of section 101.101(a) and (c), Texas Tort Claims Act, and the Hospital was entitled to summary judgment as a matter of law on their affirmative defense of no notice of injury."  *Id.*  So, too, is Thompson's affidavit here.

most it had knowledge that a known complication of hysterectomy occurred.

The McQueens respond that, particularly analogizing to the *Arancibia* decision, these facts show actual notice to UTHSCH and the trial court properly denied UTHSCH's plea. They contend Teresa's medical records provided actual notice to UTHSCH. The McQueens also point to their expert Battaglia's affidavit, wherein he reviewed the medical records and opined that the injury to Teresa's sigmoid colon "as a result of the misapplication misuse (negligent surgical technique) of surgical instruments (trocars and/or other sharp instruments and/or monopolar cautery)" represented a breach of the standard of care by Schneider. The McQueens argue that the evidence conclusively establishes that UTHSCH had actual notice by at least September 15, 2009. In addition, they argue that UTHSCH cannot evade subjective awareness by subjectively refuting fault. *See Arancibia*, 324 S.W.3d at 550. Finally, they maintain that Schneider had knowledge of the incident and "her fault in causing the incident," and that Schneider and other UTHSCH physicians Berens and Lawrence had a duty to gather facts and report such that actual notice should be imputed to UTHSCH.

While there are some similarities between this case and *Arancibia*—particularly regarding the type of injury and the issue of actual notice to be decided as a matter of law on interlocutory appeal from the denial of a plea to the jurisdiction—we ultimately conclude that here the circumstances do not present a fact question on UTHSCH's actual notice.

In *Arancibia*, Irene Arancibia died three days after two resident physicians performed laparoscopic hernia surgery on her. *See* 324 S.W.3d at 546. Irene was discharged from the hospital the same day of the surgery but returned to the emergency room two days later with abdominal pain. *Id.* Emergency surgery showed that during the hernia operation, her bowel was perforated, leading to acute

12

peritonitis, sepsis, and ultimately her death. *Id.* Here, Teresa underwent a robotic-assisted laparoscopic hysterectomy, was subsequently discharged, presented to the emergency room two days later with abdominal pain, and had to undergo additional emergency surgery as a result of bowel perforation during her hysterectomy. In *Arancibia*, there was only one possible instrumentality of the harm—the governmental actor. *See id.* at 549–50 (distinguishing *City of Dallas v. Carbajal*, 324 S.W.3d 537 (Tex. 2010) (per curiam), where police report did not indicate that city was responsible for missing road barricades). Likewise, here, there is no real dispute that, as reflected in the medical records and Schneider's testimony, Teresa's injury occurred sometime during her hysterectomy as performed by UTHSCH physicians.

The key question here is whether the medical records and Schneider's knowledge, assuming it is properly to be imputed to UTHSCH, constitute the requisite level of "subjective awareness" to put UTHSCH on actual notice of its fault, as ultimately alleged by the McQueens, in producing or contributing to Teresa's injury. *See id.* at 549. In *Arancibia*, the record showed that the governmental actor, University of Texas Southwestern Medical Center at Dallas ("Southwestern"), was subjectively aware, within days of the fatality, of its fault, as ultimately alleged by the Arancibias, in producing or contributing to Irene's death. *See id.* The proof of actual notice there was not just the "bad result," but rather "went beyond the mere fact of [Irene's] death." *Id.* at 550. Thus, Southwestern had actual notice as required by section 101.101(c). *Id.*

The record in *Arancibia* revealed that Dr. Watson, an attending physician, was present while the two resident physicians performed the hernia repair. *Id.* at 549. The day after Irene's death, Watson emailed his immediate supervisor, who was the chief of the gastrointestinal/endocrine division. *Id.* at 546, 549. Watson

wrote that he wanted to give his supervisor a "heads up on a terrible outcome with" a patient. *Id.* at 549. He described the surgery, which he believed went well, and Irene's return to the emergency room with "an unrecognized bowel injury." *Id.* He specifically stated that "I have already spoken with risk [management]." *Id.*[11] In addition, at the time, Watson surmised that the bowel perforation resulted from a retraction injury. *Id.* The supervisor forwarded Watson's email to the surgical department chair, who indicated that he had "heard about" the incident. *Id.*

Shortly thereafter, having reviewed Irene's treatment, Watson's supervisor concluded that a "technical error occurred during the original hernia operation resulting in" two perforations in Irene's bowel. *Id.* The supervisor stated that "[a]lthough unfortunate, this is a recognized complication of laparoscopic hernia surgery. No standard of care issues were identified upon review." *Id.* The supervisor also indicated, however, that "[c]linical management contributed to" Irene's death and that the care "was not necessarily consistent with established standards." *Id.* The *Arancibia* court concluded that Southwestern was subjectively aware of its fault as ultimately alleged by the Arancibias, and that Southwestern could not evade the actual-notice determination by subjectively refuting its fault. *Id.* at 550. The *Arancibia* court observed that the purpose of the notice requirement is to enable governmental units to investigate and address claims appropriately, which was satisfied by Southwestern's actual notice. *Id.*

---

[11] The *Arancibia* court noted that there was no direct "evidence of why [Watson] did so or what he reported" to risk management, but that Watson and his superiors knew Irene had died of multiple organ failure caused by sepsis, her bowel was perforated in two places probably as a result of surgical tool retraction injury, and risk management had been alerted. 324 S.W.3d at 550. In *University of Texas Health Science Center at San Antonio v. Bailey*, the Texas Supreme Court characterized *Arancibia* as "concluding that a physician's report to a medical center's risk manager, under the circumstances, provided actual notice of a patient's claim." 332 S.W.3d 395, 398 n.10 (Tex. 2011).

14

In contrast, here, the evidence consists of medical records, including Schneider's notation in a progress report of a "bowel injury during hysterectomy" that would delay Teresa's recovery. No physician here spoke with or notified risk management; any supervisor, such as Dr. Alan Katz who supervised Dr. Schneider in obstetrics and gynecology; or a department chair to provide a "heads up" about the incident. No investigation or review was completed, much less one leading to any assessment by UTHSCH that any particular error, even if "technical," probably had occurred or that any portion of Teresa's care "contributed" to her injury. No evaluation involving the "standard of care" affiliated with the incident took place at the time. In addition, the record includes testimony from Schneider regarding the incident, albeit in the context of a deposition three and a half years later. At her deposition, Schneider acknowledged that the most likely possible cause of Teresa's bowel injury was a thermal injury from the cautery tools, although she did not see or note any direct contact of any tool to her bowel or any coupling between tools. Schneider indicated that if she had noted a bowel injury during the hysterectomy, she would have documented it and called in general surgery to evaluate the bowel. And during follow-up, Schneider told Teresa she "didn't know how it was caused." Schneider described Teresa's injury as a "complication associated with the procedure." She could not think of anything "unusual" and would not change anything she did during the procedure. Schneider also stated that she did not believe that her use of any of the cautery tools fell below the standard of care.[12]

In sum, the evidence presented by the medical records[13] and Schneider's

[12] The McQueens also acknowledged they never complained to anyone at UTHSCH about Teresa's care.

[13] Pre *Simons* and *Arancibia*, this court has concluded a fact issue existed on actual notice based on medical records. *See Angleton Danbury Hosp. Dist. v. Chavana*, 120 S.W.3d 424, 427–28 (Tex. App.—Houston [14th Dist.] 2003, no pet.). *Chavana* involved an incorrect injection given during cataract surgery. In *Chavana*, the doctor filled out a hospital quality

15

knowledge[14] was that a bowel injury complication occurred at some point during Teresa's hysterectomy; Schneider did not know what caused the perforation and did not attribute it in any way to anything she or anyone else particularly did or failed to do.[15] Even assuming, without deciding, solely for purposes of our analysis that Schneider in her particular hospital employee role was charged with a duty to investigate and report, on this record, imputing her knowledge to her supervisor or risk management would not have provided UTHSCH with subjective awareness of its fault or implicit responsibility, as ultimately alleged by the McQueens, in producing or contributing to Teresa's injury. *See id.* at 549–50.

While we acknowledge that "an unqualified confession of fault" is not required, *see id.* at 550, and that "a government cannot evade the determination [of liability] by subjectively refuting fault," *see id.*, we conclude there must exist something in the circumstances to provide a subjective signal to the governmental unit within the six-month period that there might be a claim, even if unfounded, at issue. There must be something more than the mere fact of a "bad result," even one that perhaps a prudent person or physician would have investigated. *See id.*; *Simons*, 140 S.W.3d at 347–48. Otherwise, the hospital would then be charged

assurance report on the date of the occurrence wherein he stated he incorrectly injected saline into the plaintiff and listed a district nurse as a "witness to the occurrence." *Id.* at 427. The report stated it was to be delivered to the human resources director/risk manager, and handwritten notations reflected additional investigation of the incident. *Id.* at 428.

[14] The record contains no evidence, aside from the medical records, regarding the knowledge of any other UTHSCH employee.

[15] According to Schneider, the resident physician Zamora did not use the cautery tools, only the trocars. Schneider testified that the trocars could not have caused the perforation based on distance. Schneider indicated that if anyone else used the cautery tools, it was Berens. However, Schneider indicated she "truly [doesn't] remember what part of the procedure [Berens] did." *See Muniz v. Cameron Cnty.*, No. 13-10-00689-CV, 2012 WL 1656326, at *7 (Tex. App.—Corpus Christi May 10, 2012, pet. denied) (mem. op.) ("[S]ince the fatal collision, witnesses have expressed difficulty recalling facts in their depositions taken over two years after the collision" and police cruiser at issue had since been destroyed in another accident).

with actual notice in and need to investigate every instance where a risk or possible complication generally attributable to a surgical or other procedure resulted in an injury. While this might not fully "eviscerate" the notice requirement's purpose, it certainly appears to be in tension with it. *See Cathey*, 900 S.W.2d at 341. *Cathey* and *Simons*, as reaffirmed in *Arancibia*, cannot fairly be read to require such a result.[16]

Further, even taking into account Battaglia's assessment, based on his review of the medical records, that Schneider's "negligent surgical technique"— injuring an organ "not part of the operative surgical field" by some "misapplication misuse . . . of surgical instruments"—allegedly breached the standard of care, we cannot agree that the medical records in this case raised a fact issue to convey subjective awareness to UTHSCH of its fault sufficient to meet section 101.101(c). *Compare Cathey*, 900 S.W.3d at 341–42 (no fact issue as a matter of law on actual notice where expert reviewed medical records and opined negligent delay of 30 minutes in C-section resulted in stillbirth), *with Dinh*, 896 S.W.2d at 253 (fact issue on actual notice where medical records indicated not only plaintiff suffered a cerebral vascular "accident," but also evidenced delays as long as eight hours by hospital personnel in examining plaintiff and providing blood transfusion, and detailed plaintiff's deteriorating condition, and where expert opined plaintiff suffered stroke while in hospital).

---

[16] *See Arancibia*, 324 S.W.3d at 548 (*Cathey* rejected interpretation of notice requirement that would require only knowledge of injury by hospital); *Simons*, 140 S.W.3d at 347 ("*Cathey* cannot fairly be read to suggest that a governmental unit has actual notice of a claim if it could or even should have learned of its possible fault by investigating the incident. Interpreted so broadly, subsection (c) would become the rule, leaving subsection (a) as the exception for situations when the governmental unit was wholly unaware that any incident had occurred at all. Governmental units would not be given notice of most incidents and would thus have some need to investigate them all, which, as we explained in *Cathey*, would defeat the purpose of the notice provision.").

Even viewed in the light most favorable to the McQueens and resolving all doubts in their favor, this record demonstrates, as a matter of law, that UTHSCH was not subjectively aware of its fault, as ultimately alleged by the McQueens, until well beyond the six-month notice period after the incident. Therefore, on this record, because the McQueens did not present evidence sufficient to raise a fact question on actual notice, we conclude that the trial court erred in denying UTHSCH's plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 228.

We sustain UTHSCH's second issue. Because we dispose of this interlocutory appeal based on notice and the trial court's lack of subject matter jurisdiction, we do not reach UTHSCH's third and fourth issues. *See* Tex. R. App. P. 47.1.

### III. CONCLUSION

Accordingly, we reverse the trial court's denial of UTHSCH's plea to the jurisdiction and render judgment dismissing the McQueens' claims for want of jurisdiction.

/s/ Marc W. Brown
Justice

Panel consists of Justices Boyce, Christopher, and Brown. (Christopher, J., dissenting).

18