**Reversed and Rendered and Memorandum Opinion filed June 23, 2015.**



In The

## 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔚𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

### NO. 14-14-00628-CV

**THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, Appellant**

**V.**

**JERRY CHEATHAM, Appellee**

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-20312**

### M E M O R A N D U M   O P I N I O N

The University of Texas Health Science Center at Houston appeals from the denial of its plea to the jurisdiction seeking dismissal of appellee Jerry Cheatham's health care liability claim based on immunity. We reverse the trial court's order and render judgment dismissing Cheatham's claim against the Health Science Center.

## BACKGROUND

The Health Science Center, a Texas governmental unit, employs Dr. Hazim Safi and Dr. Anthony Estrera. Drs. Safi and Estrera performed partial left heart bypass surgery on Cheatham at Memorial Hermann Hospital on April 9, 2008. Several nurses employed by Memorial Hermann assisted the doctors with the procedure. Cheatham was taken for a routine X-ray shortly after the doctors completed his surgery. The X-ray revealed a curved, metallic density within Cheatham's chest. Cheatham was returned to the operating room, where Dr. Estrera removed a surgical needle from Cheatham's chest.

Cheatham sued Dr. Safi, Dr. Estrera, and Memorial Hermann alleging that the doctors and hospital negligently left a needle inside Cheatham's chest during surgery. Drs. Safi and Estrera moved to dismiss Cheatham's claims as governmental employees pursuant to section 101.106(f) of the Texas Civil Practice and Remedies Code,[1] and the trial court granted the doctors' request.

Cheatham thereafter filed an amended petition adding the Health Science Center as a defendant.[2] The Health Science Center answered Cheatham's petition and filed a plea to the jurisdiction, asserting that immunity precludes Cheatham's suit against the Health Science Center.[3] According to the Health Science Center,

---

[1] Texas Civil Practice and Remedies Code section 101.106(f) provides: "If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed." *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) (Vernon 2011).

[2] In his amended petition Cheatham asserts claims against the Health Science Center and Memorial Hermann. Memorial Hermann is not a party to this appeal.

[3] The Health Science Center filed a motion to dismiss pursuant to Texas Civil Practice and Remedies Code section 74.351 before filing its plea to the jurisdiction. *See* Tex. Civ. Prac.

2

the trial court lacked subject matter jurisdiction because Cheatham's claim did not fall within a limited waiver of immunity provided by the Texas Tort Claims Act due to the absence of formal or actual notice of Cheatham's claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.101 (Vernon 2011). Additionally, the Health Science Center asserted that the alleged injury was not caused by a condition or the Health Science Center's use of tangible personal property. *See id.* § 101.021(2) (Vernon 2011). The Health Science Center filed evidence in the trial court to support its plea. Cheatham did not contest the admissibility of this evidence and relied on it in his response. The Health Science Center timely appealed after the trial court denied its plea.

## ANALYSIS

We have jurisdiction over this interlocutory appeal pursuant to Texas Civil Practice and Remedies Code section 51.014(a)(8). *See id.* § 51.014(a)(8) (Vernon 2015). Cheatham does not dispute that, for jurisdictional purposes, he brought his claim against the Health Science Center under the Tort Claims Act. We address only whether the Health Science Center received formal or actual notice of Cheatham's claim as required by the Tort Claims Act because this issue is dispositive of the trial court's jurisdiction.

## I. Immunity

The State of Texas, its agencies, and subdivisions, such as the Health Science Center, generally enjoy immunity from suit and from liability unless immunity has been waived. *See Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 554

---

& Rem. Code Ann. § 74.351 (Vernon Supp. 2014) (requiring a plaintiff asserting a health care liability claim to serve an expert report on each defendant not later than 120 days after the defendant answers). The trial court denied the Health Science Center's motion, and we affirmed. *See Univ. of Tex. Health Sci. Ctr. at Houston v. Cheatham*, 357 S.W.3d 747, 748 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

(Tex. 2002); *Univ. of Tex. Health Sci. Ctr. at Houston v. McQueen*, 431 S.W.3d 750, 754 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Absent a waiver, governmental entities, like [the Health Science Center], are generally immune from suits for damages.").

The Tort Claims Act embodies limited waivers of immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.025 (Vernon 2011); *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 94 (Tex. 2012). The Act provides, among other waiver provisions, that a governmental unit is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). To invoke a Tort Claims Act waiver, a claimant must give a governmental unit pre-suit notice of its claim. *See id.* § 101.101. Failure to give notice pursuant to the Act requires dismissal of the suit against the governmental unit for lack of subject matter jurisdiction. *See* Tex. Gov't Code Ann. § 311.034 (Vernon 2013); *McQueen*, 431 S.W.3d at 754.[4]

The Tort Claims Act notice provision states in pertinent part:

(a) A governmental unit is entitled to receive notice of a claim against it under [the Act] not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:

---

[4] Cheatham argues that the Health Science Center "waived lack of notice as an affirmative defense" by "wait[ing] nearly four years to amend its answer to specifically deny receiving notice." We reject Cheatham's argument because notice pursuant to the Tort Claims Act is a requirement for subject matter jurisdiction, which "is never presumed and cannot be waived." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443-44 (Tex. 1993); *see* Tex. Gov't Code Ann. § 311.034 ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."); *see also Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 546 (Tex. 2010) (the Texas Legislature amended Government Code section 311.034 in 2005 to provide that the requirements for Tort Claims Act notice are jurisdictional).

4

(1) the damage or injury claimed;

(2) the time and place of the incident; and

(3) the incident.

. . .

(c) The notice requirements provided . . . by Subsection[] (a) . . . do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

Tex. Civ. Prac. & Rem. Code Ann. § 101.101.

It is undisputed that Cheatham did not give the Health Science Center formal notice of his claim as provided by section 101.101(a). Cheatham argues that the Health Science Center had actual notice as provided by section 101.101(c).

To impute actual knowledge of an injury to a governmental unit, a party must show that the governmental unit had "knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved." *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *see also Tex. Dep't. of Criminal Justice v. Simons*, 140 S.W.3d 338, 344-48 (Tex. 2004) (discussing the *Cathy* elements). Standing alone, knowledge that an injury has occurred does not establish actual notice. *McQueen*, 431 S.W.3d at 755 (citing *Cathey*, 900 S.W.2d at 341). "It is not enough that a governmental unit should have investigated an incident as a prudent person would have, or that it did investigate, perhaps as part of routine safety procedures, or that it should have known from the investigation it conducted that it might have been at fault." *Simons*, 140 S.W.3d at 347-48. Instead, a governmental unit must have knowledge that amounts to the same notice to which it is entitled under section 101.101(a),

which "'includes subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury.'" *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 548-49 (Tex. 2010) (quoting *Simons*, 140 S.W.3d at 347). "Fault, as it pertains to actual notice, is not synonymous with liability; rather, it implies responsibility for the injury claimed." *Arancibia*, 324 S.W.3d at 550.

The Tort Claims Act notice requirements "'ensure prompt reporting of claims in order to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial.'" *Simons*, 140 S.W.3d at 344 (quoting *Cathy*, 900 S.W.2d at 341). "If a governmental unit is not subjectively aware of its fault, it does not have the same incentive to gather information that the statute is designed to provide, even when it would not be unreasonable to believe that the governmental unit was at fault." *Simons*, 140 S.W.3d at 348.

## II.    Standard of Review

We review a trial court's ruling on a plea to the jurisdiction *de novo*. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). "'[I]f a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised,' even where those facts may implicate the merits of the cause of action." *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009) (quoting *Miranda*, 133 S.W.3d at 227). If the evidence creates a fact question regarding jurisdiction, the trial court cannot grant the plea, and the fact question will be resolved by the factfinder. *Miranda*, 133 S.W.3d at 227-28. If the relevant evidence is undisputed or fails to raise a fact question, the trial court rules on the plea as a matter of law. *Id.* at 228.

The standard of review for a plea to the jurisdiction based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.*; *see Thornton v. Ne. Harris Cnty. MUD 1*, 447 S.W.3d 23, 32 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Under this standard, we take as true all evidence favoring the nonmovant and draw all reasonable inferences and resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228. "[A]ter the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiff[], when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Id.*; *see City of Galveston v. Murphy*, No. 14-14-00222-CV, 2015 WL 167178, at *2 (Tex. App.—Houston [14th Dist.] Jan. 13, 2015, no pet.) (if the movant presents conclusive proof that the trial court lacks subject matter jurisdiction, then the nonmovant must present evidence sufficient to raise a material issue of fact regarding jurisdiction, or the plea will be sustained).

## III.  Evidence Adduced in the Trial Court

The Health Science Center's evidence consists of (1) excerpts from Dr. Safi's and Dr. Estrera's deposition testimony; (2) Dr. Safi's curriculum vitae; (3) an affidavit from the Health Science Center's healthcare risk manager; (4) Cheatham's medical records; and (5) the report of Cheatham's medical expert. Cheatham did not dispute the admissibility of this evidence, but relied on the evidence to argue that a fact issue precluded dismissal of his claim against the Health Science Center for lack of jurisdiction.

Dr. Estrera testified in his deposition that a needle was unintentionally left in Cheatham's chest during his left heart bypass surgery. Dr. Estrera stated that he could not recall Cheatham's bypass surgery and could only speculate as to how a

7

needle was left in Cheatham's chest. Dr. Estrera testified that typically a needle is used to suture an incision. According to Dr. Estrera, after a doctor sutures an incision, the surgical needle is handed to a nurse, who cuts the suture from the needle. The doctor then ties the suture down without the needle attached. Dr. Estrera testified that, at some point during suturing, both the doctor and the nurse have a hand on the needle. Dr. Estrera stated that it is the nurse's responsibility to keep track of the needles and other instruments used during surgery. Dr. Estrera testified that the nurses who assisted with Cheatham's surgery were employed by Memorial Hermann.

Dr. Safi testified in his deposition that a needle was left in Cheatham's chest in error. Dr. Safi could not explain how the error occurred. He stated, that during suturing: "[W]hat we do is cut the needle — the string, so we tie [*sic*]. And we give the two needles to the nurse. These two needles sometimes have life [*sic*] of its [*sic*] own. Sometimes they fall, you know, by accident." According to Dr. Safi, typically, a doctor will not close an incision unless a nurse reports three times that all surgical needles have been accounted for. Dr. Safi stated that the nurses who assisted with Cheatham's surgery were employed by Memorial Hermann. Dr. Safi testified that he could not recall telling Cheatham to file a lawsuit against him.

The Health Science Center's healthcare risk manager averred in her affidavit that she has responsibility for handling all tort claim notices received by the Health Science Center. She stated that her office first received notice of Cheatham's claim against the Health Science Center through a formal notice letter received by her office on November 19, 2009, which was over six months after Cheatham's surgery.

Cheatham's medical records show that on April 9, 2008, Cheatham underwent left heart bypass surgery to repair his aorta. A perioperative record

shows in the line labeled "Count Results" that checkmarks are next to the words "Correct" and "MD Notified." A post-operative radiology report states: "A curved metallic density . . . overlying the hemidiaphragm has the appearance of a surgical needle." Cheatham's discharge summary states: "On April 9, 2008, Dr. Estrera performed repair of descending thoracoabdominal aortic aneurysm. On the same day the patient was taken back to the operating room for an exploratory thoracotomy and foreign body removal."

The Health Science Center also filed the report of Cheatham's medical expert. The expert states in his report that he has reviewed Cheatham's medical records. He further states:

> The standards of care require the surgeons and operating room personnel to ensure that no foreign materials are inadvertently left in a body cavity, such as instruments, sponges and needles. All instruments, sponges and needles must be counted before the surgery and again after the surgery to ensure that none are left inside the patient. The counts must be done accurately to ensure that they are correct.

> The standard of care was breached by [Drs.] Safi and Estrera who were employed by [the Health Science Center] when they left a needle in Mr. Cheatham's chest cavity. The standard of care was breached by the operating room technician and circulating nurse when they incorrectly reported that the needles were all accounted for.

## IV. Discussion

We determine that the evidence filed in the trial court conclusively establishes that the Health Science Center did not have subjective awareness of its fault, as alleged by Cheatham, in producing or contributing to Cheatham's claimed injury. *See Arancibia*, 324 S.W.3d at 548-49. Even if Dr. Safi's and Dr. Estrera's knowledge is imputed to the Health Science Center, at most this is imputed knowledge that Cheatham suffered an injury resulting from a needle being left

inside Cheatham's chest in error.[5]

Although it was error to leave a needle inside Cheatham's chest, the evidence shows that the Health Science Center did not know how this error occurred, nor did it accept responsibility for the error. *Cf. id.* at 550 (governmental entity was subjectively aware of its fault because it conceded "that its surgical error perforated [a patient's] intestine, resulting in sepsis, multiple organ failure, and death"). While subjective awareness of fault may be shown by circumstantial evidence, Dr. Safi's and Dr. Estrera's testimony and the medical records suggest, at most, that the Health Science Center should have conducted an investigation, which may have revealed its fault. *See Simons*, 140 S.W.3d at 348. These circumstances do not establish the Health Science Center's subjective awareness of fault. *See id.* at 347 ("*Cathey* cannot fairly be read to suggest that a governmental unit has actual notice of a claim if it could or even should have learned of its possible fault by investigating the incident.").

Cheatham and his expert rely on the medical records to assert that Drs. Safi and Estrera were responsible for leaving the needle inside Cheatham's chest. The medical records, however, do not apportion fault to the doctors, nor do the records otherwise suggest that the Health Science Center was subjectively aware of its fault in producing or contributing to Cheatham's injury. *See Arancibia*, 324 S.W.3d at 548-49. Instead, the medical records, together with the doctors' deposition testimony, show that Memorial Hermann nurses may have been the sole producers or contributors of Cheatham's injury; therefore, the medical records do not show the Health Science Center's fault even if they show error. *See City of*

---

[5] We assume, for argument's sake only, that Dr. Safi's and Dr. Estrera's knowledge can be imputed to the Health Science Center. *See McQueen*, 431 S.W.3d at 755 ("Actual notice may be imputed to the governmental entity by an agent or representative who receives notice of the *Cathey* elements and who is charged with a duty to investigate the facts and report them to a person of sufficient authority.").

10

*Dallas v. Carbajal*, 324 S.W.3d 537, 539 (Tex. 2010) (police report showing that barricades were missing was not evidence of a governmental unit's subjective awareness of its fault after an accident, because "a private contractor or another governmental entity (such as the county or state) could have been responsible for the [missing barricades]").

Cheatham did not contest the Health Science Center's evidence or file controverting evidence in the trial court. Cheatham asserts on appeal that Dr. Safi told him that there was "no excuse" for leaving a needle inside Cheatham's chest. We have reviewed the record. There is no proof in the record that Dr. Safi made such a statement.

Under these circumstances, we determine that the Health Science Center conclusively proved, as a matter of law, that the trial court lacked subject matter jurisdiction because the Health Science Center did not have subjective awareness of its fault, as alleged by Cheatham, in producing or contributing to Cheatham's claimed injury, or otherwise have sufficient notice pursuant to the Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.101; Tex. Gov't Code Ann. § 311.034; *Arancibia*, 324 S.W.3d at 548-49; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005) ("Evidence is conclusive only if reasonable people could not differ in their conclusions."). Cheatham did not present evidence sufficient to raise a material issue of fact regarding jurisdiction after the Health Science Center proved that the trial court lacked jurisdiction; therefore, we hold that the trial court erred in denying the Health Science Center's plea to the jurisdiction, and we render judgment dismissing Cheatham's claim. *See Miranda*, 133 S.W.3d at 228; *Murphy*, 2015 WL 167178, at *2.

## CONCLUSION

We reverse the trial court's order denying the Health Science Center's plea

11

to the jurisdiction and render judgment dismissing Cheatham's claims against the Health Science Center for lack of subject matter jurisdiction.


/s/     William J. Boyce
            Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally.