

NUMBER 13-16-00426-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LA JOYA INDEPENDENT SCHOOL DISTRICT,                    Appellant,

v.

TANYA GONZALEZ, INDIVIDUALLY
AND A/N/F of JOSUE ROGELIO URANGA,
DECEASED MINOR,                                        Appellees.

### On appeal from the 430th District Court
### of Hidalgo County, Texas.

# O P I N I O N

### Before Justices Rodriguez, Contreras, and Benavides
### Opinion by Justice Contreras

This is an appeal from the trial court's denial of a plea to the jurisdiction filed by

appellant La Joya Independent School District (the District). Appellee Tanya Gonzalez,

individually and as next friend of Josue Rogelio Uranga, a deceased minor, sued the

District after an accident that resulted in Uranga's death. By three issues, the District

contends the trial court erred in denying its plea to the jurisdiction because: (1) it did not receive timely notice of the claim as required by the Texas Tort Claims Act (TTCA); (2) there was no operation or use of a motor vehicle and therefore no waiver of immunity under the TTCA; and (3) there was no causal nexus between any alleged operation or use of a motor vehicle and Uranga's death. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, .101 (West, Westlaw through 2017 1st C.S.). We affirm.

## I. BACKGROUND

Gonzalez alleged the following in her live petition. On October 23, 2012, a District school bus driven by District employee Salvador Rodriguez Jr. stopped at a designated bus stop at the intersection of Santos Ramirez Street and U.S. Expressway 83 in La Joya, Texas. Uranga, a 13-year-old student who was usually picked up at that location, was not at the bus stop, and the bus departed. Rodriguez turned the bus into the crossover between the expressway's main lanes, but when he saw Uranga approaching the bus stop on foot, Rodriguez stopped the bus and activated its flashing warning lights. Gonzalez claims the bus's flashing warning lights signaled to Uranga that it was safe to cross the expressway. As Uranga crossed the expressway, he was struck by a vehicle driven by Jaime Venecia; Uranga died at the scene. Gonzalez sued Venecia and the District. As to the District, Gonzalez alleged that Rodriguez, while in the course and scope of his employment, acted negligently by failing to follow protocols and procedures for the safe loading of students "by creating a non-designated bus stop" and activating the bus's flashing lights. Gonzalez alleged that Uranga's death was proximately caused by Rodriguez's wrongful acts and omissions, and that the District was vicariously liable.

The District filed a plea to the jurisdiction arguing that it was immune to suit as a

2

governmental entity and that its immunity was not waived by the TTCA because: (1) the accident did not arise out of the operation or use of a motor vehicle; and (2) Gonzalez failed to provide the District with notice as required under the statute. *See id.* § 101.101. The District attached no evidence in support of its plea. In response, Gonzalez argued that Rodriguez's actions of driving the bus into the crossover, stopping it there, and activating its flashing warning lights were affirmative acts involving the operation or use of a vehicle, and the District's immunity was therefore waived. *See id.* § 101.021. Further, although Gonzalez conceded that no written notice had been provided to the District, she asserted that the District had actual notice of her claim.

Following two hearings, the trial court denied the District's plea to the jurisdiction. This accelerated interlocutory appeal followed. *See id.* § 51.014(a)(8) (West, Westlaw through 2017 1st C.S.) (allowing a governmental unit to immediately appeal an interlocutory order denying a plea to the jurisdiction).

After the parties filed their initial briefs, we noted that the jurisdictional evidence before the trial court included a video recording containing conversations in Spanish, but that the recording was not part of the appellate record. Therefore, we abated the appeal and remanded for supplementation of the appellate record with a transcription and translation of the recording. The supplemental record was filed with this Court on August 3, 2017, the parties filed supplemental briefs, and we reinstated the appeal.

## II. DISCUSSION

### A. Standard of Review

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34

3

S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction. *Id.*; *see Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

The plaintiff has the initial burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Univ. of N. Tex. v. Harvey*, 124 S.W.3d 216, 220 (Tex. App.—Fort Worth 2003, pet. denied). Whether a trial court has subject matter jurisdiction and whether the pleader has alleged facts that affirmatively demonstrate the trial court's subject matter jurisdiction are questions of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *See Miranda*, 133 S.W.3d at 226, 228.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, even when the evidence implicates the merits of the cause of action. *Id.* at 227; *Blue*, 34 S.W.3d at 555; *see City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009). If the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228. But if the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* at 227–28. In considering the evidence, we take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id.*

4

A defendant cannot simply deny the existence of jurisdictional facts and force the plaintiff to raise a fact issue. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002). In other words, a defendant may not advance a "no-evidence" plea to the jurisdiction. *See id.*; *cf*. TEX. R. CIV. P. 166a(i) (allowing for no-evidence motion for summary judgment).

## B.   Applicable Law

The doctrine of sovereign immunity provides that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006) (citing *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847)). Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State such as school districts. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004).

The TTCA waives governmental immunity for, among other things, claims of "property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment" if "the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A). The TTCA also includes a notice provision which must be complied with in order for jurisdiction to be properly invoked. *See id*. § 101.101; TEX. GOV'T CODE ANN. § 311.034 (West, Westlaw through 2017 1st C.S.) ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.").

## C.    Actual Notice

The District contends by its first issue that the trial court erred in denying its plea to the jurisdiction because it was not provided with notice of Gonzalez's claim.

Under the TTCA, a governmental entity "is entitled to receive notice of a [TTCA] claim against it . . . not later than six months after the day that the incident giving rise to the claim occurred."  TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a).  The notice must "reasonably describe . . . (1) the damage or injury claimed; (2) the time and place of the incident; and (3) the incident."  *Id.*  But this formal notice requirement "do[es] not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged."  *Id.* § 101.101(c).  The Texas Supreme Court held in *Cathey v. Booth* that "actual notice" in this context means that the governmental unit has "knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved."  900 S.W.2d 339, 341 (Tex. 1995); *see Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 548–59 (Tex. 2010).[1]  To satisfy the second requirement for

---

[1] Section 101.101 of the TTCA states in its entirety as follows:

(a)     A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred.  The notice must reasonably describe:

    (1)     the damage or injury claimed;

    (2)     the time and place of the incident;  and

    (3)     the incident.

(b)     A city's charter and ordinance provisions requiring notice within a charter period permitted by law are ratified and approved.

(c)     The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

actual notice, a governmental unit must have "knowledge that amounts to the same notice to which it is entitled by section 101.101(a)," which "includes subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury." *Tex. Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 347 (Tex. 2004). "Fault, as it pertains to actual notice, is not synonymous with liability; rather it implies responsibility for the injury claimed." *Estate of Arancibia*, 324 S.W.3d at 550. Although actual notice is a fact question when evidence is disputed, in some instances, actual notice can be determined as a matter of law. *See Simons*, 140 S.W.3d at 348.

"Actual notice may be imputed to the governmental entity by an agent or representative who receives notice of the *Cathey* elements and who is charged with a duty to investigate the facts and report them to a person of sufficient authority." *Univ. of Tex. Health Sci. Ctr. at Houston v. McQueen*, 431 S.W.3d 750, 755 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Stevens*, 330 S.W.3d 335, 339–40 (Tex. App.—San Antonio 2010, no pet.)). That is, actual notice "is not limited to only a particular government official or employee, such as a director of risk management." *McQueen*, 431 S.W.3d at 755 (citations omitted).

---

Tex. Civ. Prac. & Rem. Code Ann. § 101.101 (West, Westlaw through 2017 1st C.S.). Subsection (c) states that the notice requirement of subsection (a) "do[es] not apply" when the governmental unit has "actual notice" that a death, an injury, or property damage has occurred. *Id.* § 101.101(c). Nevertheless, the *Cathey* Court rejected the argument that subsection (c) "requires only that a governmental unit have knowledge that a death, an injury, or property damage has occurred." *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). Despite the plain language of the statute, the Court grafted onto subsection (c) an additional requirement that the governmental unit be aware of its "alleged fault" in "producing or contributing" to the incident. *Id.*; *see Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 347 (Tex. 2004). The *Cathey* Court held that this "holding preserves the purpose of the notice statute"—i.e., "to ensure prompt reporting of claims in order to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial," *Cathey*, 900 S.W.2d at 341—even though the Legislature explicitly chose to make the notice requirement inapplicable when the governmental unit knows that, among other things, a death has occurred. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.101(c). In any event, we are required to follow the Texas Supreme Court's precedent. *See Lubbock Cty. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002).

7

### 1. Pleadings and Evidence

In her live petition, Gonzalez alleged that the District "had actual notice of [her] claim . . . in that the District was aware of [Uranga]'s death, the time and place of his death, the facts surrounding the incident, [and] that their fault contributed to [Uranga]'s death, such that written notice would not be required." Gonzalez specifically asserted that the District was "notified of an auto pedestrian accident involving a [District] student and appeared at the scene the morning of the incident and conducted their own investigation through its Police Department and assisted the other authorities" and that, "[t]hrough [the District]'s Police Department's investigation and assistance, [the District] had knowledge of all the details surrounding the incident, including the death of its student [Uranga], the parties involved, as well as knowledge that [the District] was subjectively aware of its fault that contributed to the accident . . . ." Gonzalez further asserted that the District's "subjective awareness of fault occurred when" Rodriguez underwent a mandatory post-accident drug test the day of the accident, was suspended without pay that same day, and later resigned; and she contended that drug testing and suspension without pay is required under District policies only when there is a preponderance of evidence that a District-owned vehicle contributed to an accident.

Gonzalez asserted the same arguments in her response to the District's plea to the jurisdiction. Her response was accompanied by evidence including two incident reports regarding the accident—one prepared by a La Joya Police Department officer and a second report prepared by two District police officers—neither of which attributes fault to Rodriguez.

Gonzalez also attached a copy of a District employee handbook dated 2013 which

8

included a section regarding "Accidents Involving District-Owned Vehicles." That section states in relevant part as follows:

> All accidents involving District-owned vehicles occurring within the District's boundaries will be investigated by the District police department. All accidents involving District-owned vehicles outside the District's boundaries will be reported to proper law enforcement for investigation.
>
> Drug testing for the driver of a District-owned vehicle is mandated if there is a preponderance of the evidence that the District-owned vehicle contributed to the accident. Drug testing for the driver of a District-owned vehicle will not be mandated if there is a preponderance of the evidence that the District-owned vehicle did not contribute to the accident. (Preponderance of the evidence will be assessed by the employee's immediate supervisor after speaking to the law enforcement officer investigating the accident). Drug testing is mandated if it is unclear if the driver of a District-owned vehicle contributed to the accident. Any time there is a death as a result of the accident, the driver of the District-owned vehicle is mandated to take a drug test.

Gonzalez produced evidence showing that Rodriguez underwent a drug test, which he passed, on the day of the accident. She also produced a letter from the District superintendent showing that Rodriguez was placed on administrative leave without pay "until further notice" on the day of the accident.

At one of the hearings on the plea to the jurisdiction, the District introduced into evidence a video recording from inside Rodriguez's bus taken at the time of the incident. The trial court expressed an intent to view the recording before making its ruling. On the recording, Rodriguez can be heard conversing in Spanish with a student passenger. A State-certified interpreter provided a transcription and translation of the recording, which included the following exchange between Rodriguez and the student passenger:

[Rodriguez]: Look at him; he's coming! (student looks through the window of the bus)

. . . .

STUDENT: The dude is coming, running over here.

. . . .

[Rodriguez]: We did not see him; right?

STUDENT: Yes, of course; I'm looking at him right now; the dude is coming here. The dude is coming (Unintelligible) . . . he crosses the street (student is looking through the window)

[Rodriguez]: (Unintelligible) . . . but I heard someone scream when I turned (the bus).

STUDENT: (Unintelligible and inaudible)

[Rodriguez]: What?

STUDENT: (unintelligible and inaudible) The dude is coming. . . . (unintelligible and inaudible)

[Rodriguez]: Did he cross already?

STUDENT: Where is he? I don't see him! Well, I think! Right? (student stands up and walks to the back of the bus to look through the windows) . . . .

[Rodriguez]: Can you see him there?

STUDENT: (student is looking out the window looking for the individual) Where is he? I don't see the dude . . . .

[Rodriguez]: Hey! Something happened! Right? Dude, he was run over! Look!

STUDENT: Surely!

[Rodriguez]: Look!

STUDENT: F**k! (Inaudible and unintelligible) The dude was run over! . . .

[Rodriguez]: But, either way! Well, when I was at the "Stop" (sign) I made a turn. Right?

STUDENT: Yes.

[Rodriguez]: (Unintelligible)

STUDENT: (Unintelligible) . . . witness; or what? (Overlap)

10

[Rodriguez]: No, well, tell him that we made a turn and we were at the "crossover" and, well, no . . . (Unintelligible)

STUDENT: What was the boy's name?

[Rodriguez]: I don't know, dude.

STUDENT: Hey; no f***king way! I saw the body lying (on the ground) and I said: "F**k!"

[Rodriguez]: It's because it's too dark to pick him up there, anyway. Right?

STUDENT: But, cars were not coming from very far. No way, this dude . . . I thought to myself: "If this guy runs; they are going to . . . (Unintelligible)

[Rodriguez]: Maybe, they are even going [to] blame me, because . . . But, well, I was only parked at the crossover. I mean . . . .

STUDENT: Right . . . Well . . . It's up to you. I can tell him/her: Hey! They've just . . . run over a boy from here; but . . . .

[Rodriguez]: The police is coming already. . . .

STUDENT: It's up to you. If you want, I will tell them. If not; then I won't.

[Rodriguez]: No.

STUDENT: (Unintelligible) I can explain to the police . . . .

[Rodriguez]: What police? No. Let me talk to the supervisor. Either way; if they ask you something; well, tell them that: "Well, we turned there . . . . Right? . . . the boy was not there (overlap and unintelligible) . . . the crossover and that we had to turn this way. But . . . either way, don't say anything if he/she asks you something. Okay?

STUDENT: . . . Oh, well. If they don't tell me anything; then, I won't say anything. If they ask me something, then what? Or, I don't say anything if they ask me something, or what?

[Rodriguez]: It's that maybe he thought we were waiting for him. Right? Either way, let me talk to my supervisor.

STUDENT: And what do I tell them here? I do not tell them anything?

[Rodriguez]: No (Unintelligible) . . . if they ask you something; but (overlap) You know what to do. (Student steps out of the

11

bus and bus driver proceeds to drive). . . . ([Rodriguez] calls "Lupe" over the phone): "Hey, Lupe! Listen. The little boy who helps Mario there at the "Sub Way," I think he was run over right now, Lupe, because I turned in the parking lot . . . I was parked at the crossover, and I think that this boy thought I was going to wait for him there, and he tried to cross the street and he was run over by a car. . . .

(Interpreter's notations in original.)

## 2. Analysis

It is undisputed that Gonzalez did not provide formal notice of her claims as contemplated in section 101.101(a) of the TTCA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a). It is also undisputed that the District had knowledge of Uranga's death and the identity of the parties involved. *See Cathey*, 900 S.W.2d at 341. Therefore, the issue before us is whether the District was subjectively aware of its "alleged fault producing or contributing to the death"; if so, then the District had "actual notice" of the claim and the trial court correctly exercised jurisdiction. *See Simons*, 140 S.W.3d at 347.

We first observe that, although Gonzalez alleged in her live pleading that the District was subjectively aware of its potential fault, the District produced no evidence to the contrary such as an affidavit stating that it was unaware of its potential fault. *See Miranda*, 133 S.W.3d at 226–28 (holding that we accept as true the factual allegations in the pleadings unless the evidence raises a fact question on the jurisdictional issue). Indeed, although the District offered the bus video recording into evidence at a hearing, it did not attach any evidence whatsoever to its written plea to the jurisdiction. *See Johnson*, 73 S.W.3d at 207 (noting that the defendant cannot simply deny the existence of jurisdictional facts and force the plaintiff to raise a fact issue). Accordingly, the District arguably failed to meet its initial burden to negate or create a fact issue as to the

12

jurisdictional facts pleaded by Gonzalez. *See Miranda*, 133 S.W.3d at 226–28; *Johnson*, 73 S.W.3d at 207.

Even considering all of the jurisdictional evidence, we find that there is a fact issue as to whether the District was subjectively aware of its alleged fault. The translated transcript of the bus video recording shows unmistakably that Rodriguez was subjectively aware of his own potential fault in the accident. After noticing that Uranga had been run over, Rodriguez repeatedly expressed his intention to talk to his supervisor, and immediately thereafter, he called an individual identified as "Lupe" on the phone to report the accident. Rodriguez informed "Lupe" that he thought Uranga was run over "because . . . I was parked at the crossover, and [Uranga] thought I was going to wait for him there, and he tried to cross the street and he was run over . . . ." Rodriguez earlier told the student passenger that "[m]aybe, they are even going [to] blame me" for the accident because "maybe he thought we were waiting for him." Rodriguez's recorded comments show that he was subjectively aware of the exact claim that Gonzalez would eventually make—i.e., that he proximately caused Uranga's death by "by creating a non-designated bus stop" in the middle of an expressway crossover.

The evidence conclusively established that Rodriguez had actual notice of his potential fault, and we further find that there is a fact issue as to whether Rodriguez's actual notice may be imputed to the District. As noted, the recording demonstrates that Rodriguez reported the accident and described his potential fault to an individual identified only as "Lupe." Immediately prior to the call, Rodriguez twice expressed his intent to call his supervisor; and shortly after the call, the District's police arrived at the scene of the accident and began an investigation. Although the identity of "Lupe" was not affirmatively

13

established by the pleadings or the evidence, it is reasonable to infer, given the context, that "Lupe" was an agent or representative of the District who was charged with a duty to investigate facts and report them to a person of sufficient authority. *See McQueen*, 431 S.W.3d at 755; *Miranda*, 133 S.W.3d at 227–28 (noting that, in considering jurisdictional evidence, we indulge every reasonable inference in the non-movant's favor).[2]

Evidence merely showing that the governmental entity investigated an accident is insufficient to show actual notice. *See City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010) (citations omitted); *see also Brown v. Corpus Christi Reg'l Transp. Auth.*, No. 13-15-00188-CV, 2017 WL 2806775, at *3 (Tex. App.—Corpus Christi June 29, 2017, pet. denied) (mem. op. on reh'g) (finding that governmental entity lacked actual notice of its alleged fault where police reports did not attribute fault to governmental entity); *Tex. Dep't of State Health Servs. v. Gonzalez*, No. 13-14-00259-CV, 2014 WL 7205332, at *5 (Tex. App.—Corpus Christi Dec. 18, 2014, no pet.) (mem. op.) (same). But here, there is also evidence indicating that Rodriguez reported the accident, and the specific details of how he might have been responsible for the accident, to a supervisor. Accordingly, we conclude that there is a fact issue as to whether the District had actual notice of its "alleged fault producing or contributing to" Uranga's death. *See Cathey*, 900 S.W.2d at 341; *see also Miranda*, 133 S.W.3d at 226.

---

[2] Gonzalez argues that the police reports, employee manual, and evidence of drug testing also establish the District's actual notice. We disagree. The police reports do not state or imply that Rodriguez was responsible for Uranga's death, and they do not even explicitly state that a District-owned vehicle was involved in the accident. The employee manual establishes that drug testing is required whenever a District-owned vehicle is "involved" in an accident and either (1) the District-owned vehicle "contributed" to the accident, (2) it is unclear whether the District-owned vehicle "contributed" to the accident, or (3) a death resulted from the accident. Here, a death resulted from the accident and so the fact that Rodriguez was subjected to a mandatory drug test is not probative as to whether the District was subjectively aware of its potential fault.

14

The trial court did not err in denying the District's plea to the jurisdiction on these grounds. We overrule the District's first issue.

## D. Arising From Operation or Use of Motor Vehicle

By its second issue, the District contends that Gonzalez's claim did not involve the "operation or use of a motor-driven vehicle." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A). By its third issue, it contends that Gonzalez's claim did not "arise[] from" such operation or use. *See id.*

"Operation" refers to "a doing or performing of a practical work," whereas "use" means "to put or bring into action or service" or "to employ for or apply to a given purpose." *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992) (citing *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989)). In *LeLeaux*, a student hit her head while trying to close the back door of a school bus, but because the bus was parked and unoccupied at the time of the incident, her claim did not involve the "operation or use" of the bus. *See id.* at 50–51. Here, on the other hand, it is alleged that Rodriguez proximately caused Uranga's death by temporarily stopping the bus in a crossover and activating the bus's flashing warning lights, thereby indicating to Uranga that it was safe to cross the expressway to board the bus; and the District did not produce evidence controverting these allegations. We conclude that stopping the bus and activating the bus's warning lights in order to pick up a passenger are practical, purposeful actions which are encompassed within the applicable definitions of "operation" and "use" of a motor-driven vehicle. *See id.* Therefore, the trial court did not err in denying the District's plea to the jurisdiction on these grounds.

Taking Gonzalez's pleadings as true, *see Miranda*, 133 S.W.3d at 237, we further conclude that she has alleged facts sufficient to establish that her claim "ar[o]se[] from" Rodriguez's operation or use of the bus.  For a claim to "arise[] from" the operation or use of a motor-driven vehicle, there must be "a nexus between the operation or use of the motor-driven vehicle or equipment and [the] plaintiff's injuries." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003); *see LeLeaux*, 835 S.W.2d at 51.  This nexus requires more than mere involvement of property; rather, the vehicle's use must have actually caused the injury.  *Whitley*, 104 S.W.3d at 543.  The operation or use of a motor vehicle "does not cause injury if it does no more than furnish the condition that makes the injury possible." *Id.*

The Texas Supreme Court has held that the "arising from" standard is "something more than actual cause but less than proximate cause."  *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 928–29 (Tex. 2015) (citing *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004)).  Therefore, a plaintiff can satisfy the "arising from" standard by demonstrating the more exacting standard of proximate cause. *Id.*  The components of proximate cause are cause-in-fact and foreseeability.  *Id.* (citing *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005)).

Gonzalez alleged that Uranga was struck and killed by Venecia's vehicle as he was crossing the expressway to board Rodriguez's bus.  She further alleged that Uranga would not have attempted to cross the expressway to board the bus, and would not have been struck by Venecia's vehicle, if Rodriguez had not stopped the bus in the middle of the crossover lane and activated the bus's warning lights.  The facts pleaded by Gonzalez, taken as true, establish cause-in-fact.

The allegations are also sufficient to establish foreseeability. Foreseeability requires only "that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen." *Id.* (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 551 (Tex. 1985)). Rodriguez's duties as part of his employment as a school bus driver were not numerous, but they included the vital task of picking up and dropping off students in a safe, non-negligent manner. When, as alleged here, a bus driver stops at an undesignated location in the middle of an expressway in order to pick up a student, it is reasonable to anticipate that the student would attempt to cross the expressway, thereby risking injury or death to the student.

For the foregoing reasons, we conclude that Gonzalez's pleadings were sufficient to show that Uranga's death "ar[o]se[] from the operation or use of a motor-driven vehicle." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A). Therefore, the trial court did not err by denying the plea to the jurisdiction on these grounds. The District's second and third issues are overruled.

### III. CONCLUSION

We affirm the trial court's judgment denying the District's plea to the jurisdiction.

DORI CONTRERAS<br>
Justice

Delivered and filed the
2nd day of November, 2017.

17