# IN THE SUPREME COURT OF TEXAS

No. 18-0329

JOY WORSDALE, INDIVIDUALLY AND AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF SCOTT WORSDALE, ET AL., PETITIONERS,

v.

THE CITY OF KILLEEN, TEXAS, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

JUSTICE BOYD, joined by JUSTICE BLACKLOCK, concurring.

The Texas Tort Claims Act requires a claimant to provide "notice of a claim" against a governmental unit within six months after "the incident giving rise to the claim." TEX. CIV. PRAC. & REM. CODE § 101.101(a). This formal notice "must reasonably describe" the "damage or injury claimed," the "time and place of the incident," and "the incident." *Id.* These notice requirements, however, "do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." *Id.* § 101.101(c).

In a per curiam opinion issued twenty-four years ago, this Court held that subsection (a)'s notice requirements apply unless the governmental unit has actual notice not only that a death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged, but also of "the governmental unit's alleged fault producing or contributing to the death,

injury, or property damage; . . . and the identity of the parties involved." *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam). Subsection (c), however, says nothing about notice of fault or alleged fault producing or contributing to the harm. Wholly unmoored from any statutory text on which to anchor any analysis, the Court and the courts of appeals have struggled to understand and apply *Cathey* ever since.

Last term, I concluded in my dissent in *City of San Antonio v. Tenorio* that we should ask the parties to submit briefing on whether we should overrule *Cathey*, even though none of the parties had raised that issue. 543 S.W.3d 772, 789 (Tex. 2018) (BOYD, J., dissenting). Although I acknowledged "the value of stare decisis," I thought that *Cathey* "may be one of those rare cases where stare decisis should not 'induce us, despite the plain error of the case, to leave bad enough alone.'" *Id.* at 802 (BOYD, J., dissenting) (quoting *United States v. Johnson*, 481 U.S. 681, 703 (1987)).

In today's case, the petitioners argue first that the City of Killeen had actual notice under the *Cathey* standard. Alternatively, they argue that the evidence at least creates a fact issue on that question. And finally, as a second alternative, even if the evidence does not establish (or create a fact issue on) actual notice, they argue that the Court should reconsider and overrule *Cathey*. The Court agrees with the petitioners' first argument, holding that "the facts conclusively establish" actual notice under *Cathey* and its progeny. *Ante* at ___. It then acknowledges that, in light of that holding, "this appeal's disposition does not hinge on the relatives' alternative argument that *Cathey* was wrongly decided and should be overruled." *Ante* at ___. Yet it unnecessarily and improperly proceeds to address and reject that argument anyway. *Ante* at ___. Although we may at times *base* a decision on two or more alternative grounds, both of which support the result (and thus neither

2

of which constitutes obiter dictum),[1] the Court exceeds its bounds today by *rejecting* an alternative argument that, in light of its favorable decision on the petitioners' primary argument, it need never reach at all. If we are going to decide whether to overrule *Cathey*, we should do so in a case in which that decision matters, not as mere dicta.

The Court's decision today is inconsistent with *Cathey* and its progeny. I can hardly fault the Court for that, however, because *Cathey* and its progeny are inconsistent with themselves. The Court benevolently suggests that our post-*Cathey* decisions have "further defined the contours" of the test, *ante* at ___, but the reality is not so generous. Since *Cathey*, the Court has repeatedly morphed the test from requiring the governmental defendant's

- "actual notice" of its "alleged fault," *Cathey*, 900 S.W.2d at 341, to

- "subjective awareness of its fault, as ultimately alleged," as opposed to mere knowledge of information "that would reasonably suggest its culpability," *Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 347–48 (Tex. 2004), to

- actual awareness "that it was at fault," *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex. 2004), to

- knowledge that its "liability" is "at issue," so that it is incentivized to "investigate its potential liability," *City of Dallas v. Carbajal*, 324 S.W.3d 537, 539 (Tex. 2010), to

- knowledge not of "liability" or "culpability" at all, but rather of "responsibility" for the injury claimed, *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Estate of Arancibia ex rel. Vasquez-Arancibia*, 324 S.W.3d 544, 550 (Tex. 2010), to

- a subjective belief that it "acted in error," *Tenorio*, 543 S.W.3d at 778–79.

---

[1] *See Reynolds-Penland Co. v. Hexter & Lobello*, 567 S.W.2d 237, 243 (Tex. Civ. App.—Dallas 1978, writ dism'd by agr.) ("When our highest court gives two grounds for a decision, both of which are carefully developed and supported by authority, an intermediate court cannot justifiably disregard either of these grounds as obiter.") (citing *Stanolind Oil & Gas Co. v. Edgar*, 98 S.W.2d 222, 223 (Tex. Civ. App.—Austin 1936, writ dism'd); *Casparis v. Fidelity Union Cas. Co.*, 65 S.W.2d 404, 406 (Tex. Civ. App.—Austin 1933, writ ref'd).

In short, every time the Court has addressed section 101.101(c) since *Cathey*, it has changed the rule it had most recently announced. Today's decision only continues that practice. Directly contradicting its most recent decision in *Tenorio*, the Court holds today that the City had actual notice under subsection (c) because it knew "it *may be* responsible" for the deaths and knew of its "potential" and "alleged responsibility." *Ante* at ___, ___, ___ (emphasis added). Yet the Court held in *Simons* that the defendant must know only of its fault "as *ultimately* alleged." *Simons*, 140 S.W.3d at 347–48 (emphasis added). And when the author of today's majority opinion proposed a "may be" or "potential" responsibility standard in her dissenting opinion in *Tenorio*, the *Tenorio* majority expressly rejected that standard. *See Tenorio*, 543 S.W.3d at 779 ("JUSTICE GUZMAN does not point [in her dissent] to any evidence that the City was subjectively aware that its fault produced or contributed to the injuries or that the City believed its employees were negligent or acted in error, and instead concludes that subjective awareness of *potential fault* satisfies the notice requirement"). While unnecessarily announcing its refusal to overrule *Cathey*, the Court today *de facto* overrules *Tenorio*.

Like *Tenorio*, today's decision "represents just one more exertion in the Court's ongoing effort to figure out what it believes the law *should* require." *Id.* at 788 (BOYD, J., dissenting). I still predict that in light of the path the Court has chosen, "confusion will necessarily remain, and I am confident today's decision will not end this journey." *Id.* at 798 (BOYD, J., dissenting).[2] But unlike

---

[2] *See, e.g.*, *Jefferson County v. Reyes*, No. 09-18-00236-CV, 2018 WL 5986004, at *4 (Tex. App.—Beaumont Nov. 5, 2018, pet. pending) (mem. op.) (holding that county's risk management company's investigation finding no negligence was insufficient to prove formal or actual notice); *Tex. Tech Univ. Health Sci. Ctr. v. Lozano*, 570 S.W.3d 740, 748 (Tex. App.—El Paso 2018, pet. pending) (holding that medical records identifying claimant's injury were insufficient to prove actual notice); *Univ. of N. Tex. Health Sci. Ctr. v. Jiminez*, No. 02-160-0368-CV, 2017 WL 3298396, at *5 (Tex. App.—Fort Worth Aug. 3, 2017, pet. pending) (mem. op.) (same); *Tex. Tech Univ. Health Sci. Ctr. v. Bonewit*, No. 07-16-00211-

4

the *Tenorio* parties, the petitioners in today's case urge us to overrule *Cathey*. I would do so because, as I explained in *Tenorio*:

- the Court's holding in *Cathey* was obviously wrong because it relied on a presumed and unexpressed legislative "purpose" to add requirements subsection (c) does not impose, *id.* at 792 (BOYD, J., dissenting);

- the error was jurisprudentially significant because the *Cathey* Court, in a per curiam opinion, "commandeered the Legislature's authority to decide whether and when to waive sovereign immunity," such that "under *Cathey*, sovereign immunity *is not* waived in cases in which the Legislature has declared it *is* waived," *id.* at 794 (BOYD, J., dissenting);

- *Cathey* and our subsequent decisions attempting to apply it have "done little to promote efficiency, fairness, predictability, and legitimacy," but instead "have caused confusion and uncertainty about a statute that is perfectly clear," *id.* (BOYD, J., dissenting);

- overruling *Cathey* would cause no undue harm to anyone, but instead would merely deprive governmental units of immunity "in cases in which the Legislature has unambiguously waived their immunity," *id.* at 799 (BOYD, J., dissenting); and

- the so-called legislative-acceptance doctrine does not preclude overruling *Cathey* because (1) the legislature has never amended or re-enacted section 101.101 since *Cathey*, (2) neither *Cathey* nor our subsequent decisions have expressed a clear and understandable rule, (3) the doctrine never justifies retaining a decision that contradicts a statute's plain and unambiguous language, and (4) the doctrine itself relies on the illogical idea that courts can somehow glean one legislature's intent in enacting a statute from a subsequent legislature's failure to amend the statute, *id.* at 799–801 (BOYD, J., dissenting).

I will not repeat all the details of those arguments here, but I must at least briefly address the Court's first-ever suggestion that the statute's text and context (as opposed to its presumed purpose) somehow support either the *Cathey* test or the potential-responsibility/alleged-responsibility test the Court adopts today.

---

CV, 2017 WL 5505513, at *6 (Tex. App.—Amarillo Nov. 15, 2017, pet. pending) (mem. op.) (holding that medical records identifying claimant's injury were sufficient to prove actual notice); *La Joya Indep. Sch. Dist. v. Gonzalez*, 532 S.W.3d 892, 902 (Tex. App.—Corpus Christi–Edinburgh 2017, pet. pending) (holding employee's recorded statements were sufficient to prove actual notice).

5

First, the Court asserts, without conducting any analysis, that construing subsection (c) to mean what it says "would effectively render section 101.101(a) and (b)'s formal-notice requirements a dead letter." *Ante* at ___. But enforcing subsection (c) as written would not render subsection (a) meaningless: If the governmental unit had actual notice that a death occurred or that the claimant was injured or sustained property damage, subsection (a)'s notice requirements "do not apply"; but when the governmental unit never had such actual notice, subsection (a) applies and requires the claimant to provide the formal notice.

Second, the Court strives to find a "structural" or "symbiotic relationship" between subsection (a)'s notice requirements and subsection (c)'s actual-notice exception to support its conclusion that "subsection (c) essentially replicates subsection (a)'s 'notice of a claim' requirement." *Ante* at ___. Yet the Court held in *Simons* that subsection (c) does not require knowledge "that the claimant had actually made an allegation of fault." *Simons*, 140 S.W.3d at 347. And more importantly, the statute expressly negates any "symbiotic relationship" between subsections (a) and (c). Subsection (a) requires "notice of a claim" that reasonably describes the "damage or injury claimed," the "time and place of the incident," and "the incident." TEX. CIV. PRAC. & REM. CODE § 101.101(a). Subsection (c) provides that subsection (a)'s "notice requirements" simply "*do not apply*" if the governmental unit has actual notice that a death has occurred or that the claimant sustained an injury or property damage. *Id.* § 101.101(c) (emphasis added). So when subsection (c) applies, the governmental unit is *not* "entitled" to receive notice "of a claim," of "the damage or injury claimed," of "the time and place of the incident," or of "the incident." *Id.* § 101.101(a)(1)–(3). In holding that subsection (c) "essentially replicates subsection

(a)'s 'notice of a claim' requirement," *ante* at \_\_\_, the Court completely ignores and nullifies the statute's unambiguous statement that subsection (a)'s requirements "do not apply."

Third, the Court suggests that subsection (c)'s use of the words "notice" and "claimant" implies a requirement that the governmental unit have actual knowledge that someone is asserting or may assert a liability claim against it, so that it can make "preparations" to defend against the claim. *Ante* at \_\_. But even if "notice" means something other than "knowledge" in this context, subsection (c) specifically identifies what the governmental unit must have "actual notice" *of*: not "a claim," but "that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." *Id.* § 101.101(c). To construe the statute to require actual notice "of a claim," of "potential responsibility," of "alleged responsibility," or of any other additional facts simply, and improperly, adds requirements the statute does not impose. And, of course, the statute's reference to the "claimant" merely recognizes that there will always be a "claimant" by the time subsection (c)'s actual-notice requirement becomes relevant.

And fourth, the Court reasons that applying subsection (c) as written would produce an "absurd" result because mere knowledge that a death has occurred or that the claimant sustained an injury or property damage "would hardly ever be enough to alert a governmental unit of alleged wrongdoing and the necessity of mounting a defense." *Ante* at \_\_\_. This absurdity argument relies not on the statute's text, but on the Court's unsupported presumption that the statute's purpose is to ensure that the governmental unit receives notice of potential litigation so that it can begin preparing its defense. *Ante* at \_\_\_. But subsection (c) does not require "notice of a claim" or notice of "alleged wrongdoing and the necessity of mounting a defense." To the contrary, it says that the statute's only notice requirements do not apply at all when subsection (c) applies. When the

7

governmental unit has actual notice that a death has occurred or the claimant sustained an injury or property damage, the statute imposes no other notice requirements at all.

To say that the statute's notice requirements "do not apply" seems simple enough, but it is apparently too simple for the Court. Despite the statute's plain language, the Court assumes the statute must exist to promote some purpose, which the Court presumes despite the statute's failure to express any purpose at all. As I explained in *Tenorio*, the *Cathey* Court supported its presumption of the statute's purpose by relying solely on prior cases addressing statutes and ordinances that did *not even include an actual-notice exception* like subsection (c). *Tenorio*, 543 S.W.3d at 790 (BOYD, J., dissenting). So the Court has been basing its ongoing (and fruitless) effort to rewrite subsection (c) on cases that presumed a purpose for statutes that did not include anything like subsection (c).

And even if the Court correctly presumes the statute's purpose, its purpose "cannot be used to contradict text *or to supplement it*." *Id.* at 791 (BOYD, J., dissenting) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 57 (2012)). In short, we cannot ignore a statute's unambiguous text just because we think it produces a result that seems "absurd" in light of what we think (but the statute never says) is the statute's "purpose." *See id.* at 791–92 (BOYD, J., dissenting) (further discussing the dangers of relying on a statute's "purpose" to contradict its unambiguous text).

Having thoroughly addressed in *Tenorio* the Court's other reasons for refusing to overrule *Cathey*, I need not respond to those again here. But as a final point, I must note the Court's inconsistent approach to the issue of whether and when we should reject or overrule our precedent. We have not hesitated to reject our precedent—especially a per curiam decision—when it "departs

8

from the text's explicit focus." *Denton Cty. v. Beynon*, 283 S.W.3d 329, 332 n.14 (Tex. 2009) (rejecting *State Dep't of Highways & Pub. Transp. v. Kitchen*, 867 S.W.2d 784, 786 (Tex. 1993) (per curiam)). In fact, only two months ago, we rejected a statement we made just four years ago because the applicable statute simply did not "explicitly" support the statement and "no court has the authority, under the guise of interpreting a statute, to engraft extra-statutory requirements not found in a statute's text." *PHI, Inc. v. Tex. Juvenile Justice Dep't*, No. 18-0099, — S.W.3d —, 2019 WL 1873431, at *6 (Tex. Apr. 26, 2019) (disapproving holding in *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam)). And two weeks before that, we expressly overruled a seventy-nine-year-old decision because it "did not analyze the statutory language," "was not based on the statutory text," and contradicted what "the statute plainly states." *Ferreira v. Butler*, No. 17-0901, — S.W.3d —, 2019 WL 1575592, at *1, *3, *5 (Tex. Apr. 12, 2019) (overruling *Faris v. Faris*, 138 S.W.2d 830 (Tex. Civ. App.—Dallas 1940, writ ref'd)). In each case, we properly upheld what "we have said countless times, [that] courts must 'construe [a] statute's words according to their plain meaning' because 'changing the meaning of [a] statute by adding words to it . . . is a legislative function, not a judicial function.'" *Id.* at *5 (quoting *State Office of Risk Mgmt. v. Martinez*, 539 S.W.3d 266, 270 (Tex. 2017), and *City of Rockwall v. Hughes*, 246 S.W.3d 621, 631 (Tex. 2008)).

To be clear, I do not necessarily disagree with the Court's belief that governmental units should receive prompt notice of a potential claim so that they can investigate the claim, prepare their defense, abate the danger, seek to avoid litigation through settlement, and make wise budgeting and tax decisions. *Ante* at ___. Maybe that's a good policy. But if it's the law, it's the law only because *the Court* has said it is, not because the legislature said it is in section 101.101.

9

The Court concludes that the petitioners here satisfied its court-made law, and thus reverses the court of appeals' judgment and remands the case to the trial court. I too would reverse and remand, but I would do so because the evidence establishes that the City had all the actual notice section 101.101(c) actually requires. I thus respectfully concur only in the Court's judgment.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: June 14, 2019